IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KOKOUVI DEWONOU, | * |
| Plaintiff, | * |
| v. | * Civ. No. MJM-23-921 |
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, | * |
| Defendant. | * |

**MEMORANDUM**

Kokouvi "Roland" Dewonou ("Plaintiff") brings this suit under the Americans with Disabilities Act ("ADA") against the National Association for the Advancement of Colored People ("NAACP" or "Defendant"). In Count I of his Complaint, Plaintiff asserts a hostile work environment claim under the ADA. In Count II, Plaintiff claims that Defendant retaliated against him by terminating his employment in response to his complaints of workplace discrimination. Defendant has filed a motion for summary judgment (ECF 28), which is presently before the Court. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For reasons explained below, Defendant's motion shall be granted.

**I.      BACKGROUND**

Plaintiff was hired as an Information Technology Specialist for NAACP in March 2022. Deposition of Bryan Williams ("Williams Dep."), Def.'s Ex. B (ECF 28-31) at 26:8–9. Between March 21, 2022, and May 21, 2022, Plaintiff was supervised by Glenn Haynes. *Id.* at 10:6–11. In

May 2022, Plaintiff's new supervisor became Terry Lucas. Deposition of Kokouvi Dewonou ("Dewonou Dep."), Def.'s Ex. C (ECF 28-32) at 37:16–17. Initially, Plaintiff's position was fully remote. *Id.* at 30:15. However, in April 2022, the NAACP announced that all employees were required to report back to the office. *Id.* at 49:9–11.

Plaintiff suffers from Attention-Deficit/Hyperactivity Disorder (hereinafter "ADHD"). *Id*. at 9:15–16. For Plaintiff, the ADHD limited his ability to process information. *Id*. at 9:17. Plaintiff disclosed to Lucas in or around May 2022 that he suffered from ADHD. Deposition of Terry Lucas ("Lucas Dep.") Def.'s Ex. D: ECF 28-33 at 44:16-17.

### A. Plaintiff's Complaints About Lucas

In June 2022, Plaintiff informed Brian Williams, Interim Vice President of People and Culture,[1] that he struggled with ADHD and complained that Lucas's behavior towards him became unbearable. Williams Dep. at 31:13-14. Plaintiff asked Williams to allow him to work in a different area of the office, or on a hybrid work schedule, but Williams denied the request. Dewonou Dep. at 87:12–14. Instead, Williams gave Plaintiff an ADA accommodation form to complete. *Id.* at 124:12–125:10. Plaintiff also asked Williams to look into his issues with Lucas. *Id*. at 75:17–22. In or around June 2022, Plaintiff had another meeting with Williams, this time including Derrick Jones, Vice President of IT. *Id.* at 81:1–3. During the meeting, Plaintiff told both Williams and Jones that Lucas's behavior was extremely distracting and impeded his ability to complete his work. *Id.* at 76:20–77:6. Plaintiff complained that Lucas was very loud and consistently antagonized him. *Id.*

In June 2022, Plaintiff had a conversation with Lucas during which Plaintiff told Lucas that Plaintiff needed to limit off-hand, non-work-related conversations with him. *Id*. According to

---

[1] "People and Culture" is the name of the NAACP's Human Resources Department.

Plaintiff, Lucas "kept getting defensive" and responded that the "only way this works is if we are friends." *Id.* at 84:21–85:1; 85:6.

Lucas routinely referred to Plaintiff's ADHD medication as "cocaine" and "crack" told Plaintiff that the ADHD medication was "not good for [Plaintiff]." *Id.* at 69:21–70:8. At times, Plaintiff struggled with body pains, and Lucas tried to blame the pains on the ADHD medication. *Id.* Multiple times in 2022, when Lucas observed Plaintiff take his medication out for use, and in the presence of other co-workers, Lucas told Plaintiff "oh there he goes taking his crack again." *Id.* at 70:13–14; 88:7–9. Plaintiff responded that Lucas's comment was "not funny," that the medication was taken for a disability, and was not acceptable for Lucas to be making fun of it. *Id.* at 70:15–17. In response, Lucas told Plaintiff that he was being "too sensitive." *Id.* at 88:4-5.

In July 2022, Plaintiff was assigned to a work trip in Atlantic City, New Jersey. *Id.* at 15:22–16:1. During a meeting, Plaintiff told Jones that he had an "appointment with his psychologist" to get his ADHD medication renewed. *Id.* at 105:16–18. Jones said it was not a problem. *Id.* at 106:1–4.

In early August 2022, Plaintiff went to Williams's office again to complain again about Lucas's behavior towards him and his inability to focus because of Lucas's behavior. *Id.* at 88:12–14. "[F]ive minutes or so after" after leaving Williams's office, Plaintiff observed Williams walking into Lucas's office. *Id.* at 89:7–10. Plaintiff overheard Williams state, "it's not our fault that you can't focus," and immediately start laughing. *Id.* at 89:12-14; 91:9-14.

### B. NAACP Attendance Policy

The NAACP has probationary policies that govern an employees' first six months of employment. *See* Declaration of Alison N. Davis ("Davis Decl.") (ECF 28-2) ¶ 3; Williams Dep.

61:3–6. Plaintiff received a copy of the employee handbook detailing this policy. Davis Decl. ¶ 6;[2]

Def.'s Ex. 3 (ECF 28-5). A relevant portion of the NAACP attendance policy states the following:

> **Adherence to the office routines, including regular attendance and punctuality, shall be a part of every employee's evaluation. <u>Attendance is a KEY factor in job performance.</u>**
>
> A pattern of excessive absence, tardiness (whether excused or unexcused) longer then (sic) scheduled lunch breaks or early departures shall be sufficient cause for termination unless such absences, late arrivals, early departures or extended breaks are otherwise approved under a NAACP leave policy.
>
> Also, any absence, tardiness, longer than scheduled break or early departure that is due to an employee's disability will be excused under this policy if the absence is taken pursuant to an approved reasonable accommodation. In certain circumstances, the Association will provide an employee who has a disability with a modified or flexible work schedule to reasonably accommodate the employee when the need for the schedule change, including time off, is due to the disability. For purposes of this paragraph, "disability: is defined in accordance with the federal Americans with Disabilities Act as amended and/or equivalent state or local law.
>
> All employees must notify their supervisor one (1) hour before their scheduled start time and/or as far as possible in advance of an anticipated absence, late arrival or early departure. When advance notice is not possible, an employee shall notify their supervisor as soon as possible. Employees should inform their supervisor of the amount of work time they expect to miss. If an employee is unable to reach his/her supervisor, the employee should leave a voice mail message for their supervisor and contact the Human Resources Department.
>
> If an employee is absent for more than three (3) consecutive work days, without prior approval, they must contact the Human Resources Department for information regarding a leave of absence and may be required to provide a doctor's note justifying the absence. Employees absent for (3) three consecutive days without notification to the Human Resources Department or his or her supervisor will be considered to have abandoned his or her job and will be terminated, unless otherwise required by law. This paragraph is not applicable to employees on FMLA or ADA leave.

Def.'s Ex. 2 (ECF 28-4) at 33–34 (emphasis and capitalization in original).

Employees' "attendance and punctuality" are evaluated during the probationary period to help assess their ability to be successful in their position. Williams Dep. 61:3–62:3. Specifically,

---

[2] Plaintiff erroneously cites to Ex. 5 which is Plaintiff's termination letter. The Court believes that Davis meant to cite to ECF 5 (Ex. 3), which was Plaintiff's offer letter. But this would need to be clarified.

during the probationary period, the People and Culture department would review the employee's absences, punctuality issues, or performance issues, and if they determined that the employee was having challenges, they would have a conversation with Plaintiff to facilitate improvement or otherwise terminate the employee. *Id.*

### C. Plaintiff's Attendance Record and Termination

Plaintiff developed an extensive tardiness record while employed with NAACP. Williams met with Plaintiff at least twice to discuss his attendance issues—once, two weeks into his employment, and a second time, on August 1, 2022. Williams Dep. at 63:9–64:17. Haynes, Plaintiff's initial supervisor, expressed concerns about Plaintiff's attendance "from the very beginning" of Plaintiff's employment. *Id.* at 60:9–13. Plaintiff's attendance record included the following:

- On May 2, 2022, Plaintiff missed a meeting with Haynes, and explained to Lucas that he was chasing after his dog when he ran outside. Davis Decl. ¶ 7, Ex. 6.
- On June 6, 2022, Plaintiff notified People and Culture that he was unable to work because he was ill. Davis Decl. ¶ 8, Ex. 7.
- On June 7, 2022, Plaintiff was on sick leave. Davis Decl. ¶ 9, Ex. 8.
- Plaintiff missed work for a doctor's appointment on June 13, 2022. Davis Decl. ¶ 10, Ex. 9, ¶ 11, Ex. 10.
- On June 14, 2022, Plaintiff sent an e-mail to the IT Department stating that he would be absent on Thursday, June 16, 2022, for medical testing. Davis Decl. ¶ 12, Ex. 11.
- On June 16, 2022, Plaintiff left early due to a family emergency. Davis Decl. ¶ 13, Ex. 12.
- Plaintiff was absent on June 17, 2022. *Id.*
- Plaintiff was late for work on June 22, 2022. Davis Decl. ¶ 14, Ex. 13.

- Plaintiff was out sick on June 23, 2022. Davis Decl. ¶ 15, Ex. 14.

- On June 24, 2022, Plaintiff was out due to a family emergency. Davis Decl. ¶ 16, Ex. 15.

- By June 24, 2022, Plaintiff understood that he exhausted his sick leave. Davis Decl. ¶ 17, Ex. 16.

- On July 1, 2022, Plaintiff called out sick by text message. Davis Decl. ¶ 18, Ex. 17.

- On July 6, 2022, Plaintiff was late to work, claiming there was an issue with his dog, and then was late returning from lunch. Davis Decl. ¶ 19, Ex. 18.

- On July 26, 2022, Lucas was unable to locate Plaintiff because he left work to address an issue with his leasing office. Davis Decl. ¶ 21, Ex. 20.

- Plaintiff returned late from lunch on July 29, 2022. Davis Decl. ¶ 22, Ex. 21.

- On August 1, 2022, Plaintiff called out sick by email, reporting stomach pains. Davis Decl. ¶ 23, Ex. 22.

- On August 2, 2022, Plaintiff called out, citing "personal matters." Davis Decl. ¶ 24, Ex. 23.

On August 1, 2022, Lucas contacted People and Culture to report Plaintiff's poor work performance and his tardiness and attendance issues, and to recommend his termination. Davis Decl. ¶ 22, Ex. 21. Williams was also made aware of Plaintiff's attendance and tardiness issues through his access to payroll records as a Human Resources director. Williams Dep. at 26:4–17; 27:5–6.

On August 1, 2022, Plaintiff met with Williams to discuss his performance issues. Dewonou Dep. at 114:13–19; Williams Dep. at 63:5–8. After consulting with Jones, Lucas, and Denese Carroll, the senior management representative of the Office of General Counsel, Williams made the decision to terminate Plaintiff's employment due to poor attendance. *Id.* at 36:13–38:13.

Williams testified that Plaintiff's ADHD was "not a consideration" regarding his termination, and that Plaintiff's "attendance and punctuality issues were the primary reason …why [he] was separated from the association." *Id.* at 62:13-22. Plaintiff was terminated effective August 26, 2022. Williams Dep. at 48:3–4; Dewonou Dep. at 116:11–14; Davis Decl. ¶ 29, Ex. 28.

## II.    STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus.*, 475 U.S. at 587, but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514,

522 (4th Cir. 2003)). The burden then shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

### III. DISCUSSION

#### A. Hostile Work Environment Claim

In Count I of the Complaint, Plaintiff asserts a claim for hostile work environment under the ADA. Specifically, Plaintiff alleges that he was subjected to "discriminatory severe or pervasive conduct in [his] place of employment based on [his] disability." Compl. (ECF 1) ¶¶ 31–33.

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on a claim of hostile work environment under the ADA, a plaintiff must prove that: "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). "If the plaintiff cannot perform the essential functions of the job, with or without a reasonable accommodation, then she is not a 'qualified individual' under the ADA and therefore has no legal entitlement to an accommodation." *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 165 (4th Cir. 2024) (quoting 42 U.S.C. §§ 12111(8), 12112(b)(5)(A)). To determine whether Plaintiff was qualified for her job, the Court must determine "(1) whether she could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue, and (2) if not, whether any

reasonable accommodation by the employer would enable her to perform those functions." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cali.*, 31 F.3d 209, 213 (4th Cir. 1994) (citation modified). "Plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Id.*

Here, the Court finds no genuine dispute that Plaintiff was not a "qualified individual" for purposes of his hostile work environment claim, given the uncontroverted evidence of his poor attendance record. Apart from a couple disputed absences, *see* Dewonou Dep. at 90:7–9; 108:10–15 (Plaintiff's testimony regarding absences on August 24 and 25, 2022), Plaintiff does not dispute he was late or absent on at least ten other occasions during his probationary period, between his start date in March 2022 and termination in August 2022. Nor does Plaintiff dispute that satisfactory attendance was an essential function of his position with NAACP. *See Tyndall*, 31 F.3d at 213 ("[A] regular and reliable level of attendance is a necessary element of most jobs."); *McKinney v. Cleveland Cnty. Bd. of Educ.*, No. 22-1697, 2023 WL 4637115, at *4 (4th Cir. July 20, 2023) (affirming dismissal of ADA claim where "Appellant did not regularly come to work at the time she was terminated, and thus, was not a qualified individual as defined by the ADA"); *Moore v. Loney*, Civ. No. GLR-11-2638, 2014 WL 671446, at *8 (D. Md. Feb. 19, 2014) (concluding that plaintiff "is unable to perform the essential functions required of an Art Therapist II at Finan Center because she cannot meet the attendance requirements of the job"); *cf. Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) (affirming summary judgment in favor of former employer on Rehabilitation Act claim where "Appellee had a reasonable belief that [appellant's] ability to perform the essential functions of her job was impaired by her repeated issues with attendance and timely reporting"). The attendance policy contained within the employee handbook conveyed to Plaintiff when he started with NAACP makes the importance of meeting the

employer's expectations for attendance and punctuality clear. Def.'s Ex. 2 (ECF 28-4) at 33–34. Concerned that Plaintiff's poor attendance and tardiness might be owed to his medical condition, Williams sought to offer him accommodations, Davis Decl. ¶ 28, Ex 27 (ECF 28-29), but Plaintiff failed to return the form necessary to start this process, Williams Dep. (ECF 28-31) 62:4–6.

Plaintiff points out that, in a group text message from July 21, 2023, Lucas praised Plaintiff and others on his team for their work at the NAACP convention. Pl.'s Ex. 5 (ECF 33-6). This group text message to Lucas's entire team does not concern Plaintiff's attendance and cannot create a genuine dispute as to Plaintiff's unsatisfactory attendance record.

Because Plaintiff was not a "qualified individual" under the ADA, 42 U.S.C. § 12132, summary judgment must be entered in favor of NAACP on Count I.[3]

### B. Retaliation

In Count II of the Complaint, Plaintiff alleges that NAACP retaliated against him for complaining about discrimination in the workplace by terminating his employment. Compl. (ECF 1) ¶¶ 34–36.

To establish a prima facie case of retaliation under the ADA, a plaintiff must show that "(1) she has engaged in protected conduct; (2) she suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link between the protected conduct and the adverse action." *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 n.4 (4th Cir. 2020) (citing *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006)). Once the plaintiff establishes a prima facie case of retaliation, "[t]he 'employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" *Lashley v. Spartanburg Methodist*

---

[3] Because there is no genuine dispute that Plaintiff was not a qualified individual for purposes of his ADA hostile work environment claim, the Court declines to address the other elements of the claim contested by the parties.

*Coll.*, 66 F.4th 168, 174 (4th Cir. 2023) (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 578 (4th Cir. 2015)). At the summary judgment stage, if an employer proffers evidence of legitimate reasons for taking the adverse actions, courts may assume, without deciding, that the Plaintiff has established a prima facie case. *Bagwell v. Downtown Partnership of Baltimore, Inc.*, Civ. No. ELH-18-1786, 2020 WL 247293, at *7 n.2 (D. Md. Jan. 15, 2020) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), among other cases). Once a prima facie case is made and the employer provides a legitimate reason for the adverse action, "[t]he burden then shifts back to [the plaintiff] to show that the proffered reason is pretext." *Id.* (quoting *Jacobs*, 780 F.3d at 578). "Importantly, [the plaintiff] 'always bears the ultimate burden of persuading the trier of fact that she was the victim of retaliation.'" *Id.* (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001)). To meet this ultimate burden, "a plaintiff must establish 'both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015), *cited in Parker v. Children's Nat'l Med. Ctr., Inc.*, No. 24-1207, 2025 WL 1540954 (4th Cir. May 30, 2025). The protected conduct must have served as a "but-for" cause of the adverse action. *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

Here, NAACP identifies Plaintiff's unsatisfactory attendance record as the legitimate, nonretaliatory basis for terminating his employment. Plaintiff presents no evidence that Defendant's proffered reason for termination, his poor record of attendance, was false or that any protected activity he engaged in caused his termination.

Plaintiff argues that Lucas's recommendation to terminate him was motivated by retaliatory animus. But there is no evidence that Lucas was aware of any protected activity by

Plaintiff that could have caused Lucas to recommend termination. The only evidence Plaintiff cites is his testimony that he saw Williams go into Lucas's office "five minutes or so after" Plaintiff had complained to Williams about Lucas and that Plaintiff overheard Williams say, "it's not our fault that you can't focus," and start laughing.

Plaintiff is correct in suggesting that employment discrimination statutes "do not limit the discrimination inquiry to the actions or statements of formal decisionmakers for the employer." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290–91 (4th Cir. 2004). But these statutes do not make an employer liable "for the improperly motivated person who merely influences the decision [to take an adverse employment action;]" the employer is liable only "for the person who in reality makes the decision." *Id.* at 291. Here, Plaintiff presents no evidence that Lucas "possessed such authority as to be viewed as the one principally responsible for the decision" to terminate him or that Lucas was "the actual decisionmaker for the employer." *Hill*, 354 F.3d at 291. The record presented here is not a case where "a formal decisionmaker acts merely as a 'cat's paw' or simply 'rubberstamp[s]' a decision or recommendation actually made by a lower-level supervisor[.]" *Kaufman v. Del Toro*, Civ. No. PX-20-00983, 2024 WL 943432, at *8 (D. Md. Mar. 5, 2024) (quoting *Hill*, 354 F.3d at 290). Plaintiff presents no evidence that Lucas did anything more than merely influence the termination decision made by Williams after his independent review of Plaintiff's attendance issues and his consultation with others. There is no evidence that Lucas made the actual decision to discharge Plaintiff based on any retaliatory motive.

Finally, Plaintiff argues that circumstantial evidence surrounding the termination of Haynes shows that NAACP had engaged in retaliatory conduct in the past and likely did so in his case. Specifically, Plaintiff asks the Court to consider a LinkedIn conversation that he had with

Haynes after Haynes was terminated. Pl. Ex. 2 (ECF 33-3) at 24. The Court finds this evidence to have no bearing on, and raises no question about, the decision Williams made to terminate Plaintiff.

Accordingly, summary judgment shall be entered in favor of Defendant on Count II.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. The Court shall issue a separate Order consistent with this Memorandum.

 9/29/25
Date

Matthew J. Maddox
United States District Judge